WEAKLY & WARREN *vs.* J. D. MILLER, Assignee, & others.

OCTOBER Term, 1873.

BANKRUPTCY—NOTICE TO ASSIGNEE OF SUIT.—The provision of the 14th section of the Bankrupt Act (Rev. Stat. U. S., § 5,056), which requires a preliminary notice to the assignee to entitle a person to maintain an action against him, has no application to a bill to enjoin a judgment recovered by the bankrupt on the ground of fraud committed by him; nor will the failure to give such notice sustain a motion to dismiss a bill for want of equity on its face.

BANKRUPT NOT A NECESSARY PARTY.—The bankrupt, after the assignment of his effects to the assignee, is not a necessary party to a suit to enjoin a judgment in his favor, on the ground of fraud committed by him in its recovery.

DISCOVERY IN THE SUIT AT LAW.—The filing of a petition for discovery in the suit at law is not required as a pre-requisite to enable the judgment-debtor to impeach the judgment for fraud.

*T. M. Steger,* for complainants.

*John Ruhm,* for defendants.

THE CHANCELLOR:—The bill alleges that Adam and Fred. Karsch, as partners under the style of Karsch & Co., were carrying on in Nashville the business of manufacturing furniture, complainants being at the time furniture dealers; that Karsh & Co., being short of money for their business, applied to complainants for assistance, and they agreed to loan, and did loan them $2,000, " on the express condition that K. & Co. would sell the complainants their manufactured furniture at a discount of 25 per cent. off of regular prices so long as K. & Co. used complainants' money in their business. The discount, after about fifteen months, was reduced by mutual consent to 15 per cent." That their deal-

ings under these contracts were continued for nearly two years, with frequent settlements, and without any material misunderstanding until their dealings ran up to near $20,000, when K. & Co. paid back to complainants the $2,000 lent them. That at this time it was well understood that K. & Co. were indebted to complainants for goods, money, etc., in excess of the $2,000 lent them. That soon after, K. & Co. prevailed on complainants to accept for their accommodation a draft for $300, promising to meet it at maturity, which they failed to do, and complainants paid the draft and sued K. & Co. for the amount in the circuit court. That subsequently complainants bought of K. & Co. a bill of goods to the amount of $500, for which they declined to pay unless K. & Co. would settle with them. That K. & Co. sued them in the circuit court on said account; that the two suits were consolidated and tried together, K. & Co., on the trial, under the pleas of set off, etc., went into the whole of the dealings between themselves and complainants, denied under oath that they kept any ledger account with complainants, and testified that their account against complainants was kept alone in their day-book and blotter from which they had made up the same. That a verdict and judgment were rendered in favor of K. & Co. for $1,055, from which an appeal was taken to the supreme court, where the judgment was affirmed on the 1st day of March, 1873, for $1,170-23 and $78.71 costs. That pending the appeal, K. & Co. became bankrupts, and the suit was revived and final judgment rendered in favor of the defendant, J. D. Miller, as their assignee.

The bill then alleges that when Miller qualified as assignee of K. & Co., and took possession of their effects, "he discovered in concealment, as complainants are informed and believe, the ledger account of Karsch & Co. with Weakley & Warren, and other material evidence, which, if produced on the trial of the case before the law court, would have shown that Weakley & Warren were not indebted to K. & Co. one single cent, but, on the contrary, that they were

indebted to Weakley & Warren. This evidence, discovered as aforesaid, was wholly and exclusively in the possession and under the control of K. & Co. at the time of the trial before the law court, and was by them wilfully, purposely and fraudulently suppressed and withheld from complainants and the jury, to enable them, by false swearing, to procure a fraudulent and unjust judgment against complainants. Complainants charge that the judgment in question was obtained by the false swearing, and fraudulent concealment and suppression of material evidence on the part of K. & Co., which has since been discovered by J. D. Miller, assignee, etc., and the same is unjust in every respect."

The gist of these charges is, that the judgment was obtained by false swearing on the part of Karsh & Co. as to the amount of their account against complainants, as to the fact that the account was kept only in their day-book and blotter from which they had taken it, and that no ledger account was kept with complainants; and that the ledger account and other material evidence had, after the trial at law and pending the appeal, been found in concealment by the defendant, Miller, after he had been appointed assignee, if produced on the trial, would have shown that complainants were not indebted to K. & Co., but that K. & Co. were indebted to them, and that this evidence had been fraudulently suppressed by K. & Co., to enable them, by false swearing, to procure a fraudulent and unjust judgment against complainants.

The defendant, Miller, has moved to dismiss the bill for want of equity on its face.

Fraud, it need scarcely be said, vitiates the most solemn acts, and even judgments of the highest courts will not be permitted to stand when they are shown to have been fraudulently obtained. That a judgment obtained by the fraudulent suppression of material evidence and false swearing, made possible by such suppression, will be perpetually enjoined by equity, is too clear for argument, nor has the learned counsel for the defendant contested the point. His motion is sought to be sustained upon other grounds.

His first point is that no notice has been given to the assignee as required by the 14th section of the bankrupt act. That section is in these words : " No person shall be entitled to maintain an action against an assignee in bankruptcy for anything done *by him as such assignee*, without previously giving him twenty day's notice of such action, specifying the cause thereof, to the end that such assignee may have an opportunity of tendering amends, should he see fit to do so."

The very reading of this section shows that the notice only applies when the suit is against the assignee, " for anything done by *him as such assignee.*" The language necessarily implies an action for the wrongful act of the assignee himself, and this is rendered still plainer by the reason given for requiring the notice, namely, that he may have the opportunity of tendering amends for his wrongful act. Of course, the section can have no application to a bill in chancery to enjoin a judgment recovered by the bankrupts by their fraudulent conduct, before the assignee had anything to do with the business.

And if it were otherwise, the mode of taking advantage of the provision is not by a motion to dismiss the bill for want of equity on its face, but by. plea in abatement. The law confers upon the assignee a personal privilege, which he may waive or not at his pleasure.

A second objection is the want of necessary parties, the objection being based upon the supposition that the two Karschs are material defendants. But the appointment of the assignee has deprived them of all legal title in the judgment, and vested the same in the assignee, and they no longer have such an interest as requires them to be joined with the assignee in a suit against him. 1 D. Ch. Pr. 250 ; *De Golls* v. *Ward*, cited in note to *Wych* v. *Meal*, 3 P. Wms. 311 ; Rev. Statutes U. S., § 5,047 ; *Collet* v. *Wollaston*, 3 Bro. C. C. 228 ; *Sedgwick* v. *Cleveland*, 7 Paige, 287.

A third objection is that the transaction detailed in the bill in regard to the discount of 25 and 15 per cent. in the regular prices of manufactured furniture for an advance by com-

plainants to Karsch & Co. of $2,000 to be used in their business, is usurious, and the complainants will, for this reason, be repelled from a court of equity. This objection goes upon the supposition that the transaction as detailed is necessarily illegal and usurious, but this is clearly an erroneous view of the subject. Persons have a right to sell their property at any price they please upon an advance of money, and the sale will be valid. It is only when the transaction in property is shown to be a mere device to evade the usury laws that it is amenable to the objection of illegality. The transaction in question has a very suspicious look, and may have been of the character suggested. But I cannot necessarily infer it from the facts as detailed in the bill.

Another objection is that the bill on its face shows such laches on the part of the complainants as repels them from the court. But this is based upon a mistake of fact. The bill does not show when the fact came to the knowledge of complainants that Miller had discovered the concealed ledger and other material evidence. Besides, for aught that appears, the complainants might have had good reason to believe that the case would be reversed in the supreme court, and that they would have an opportunity to use the evidence thus discovered upon a re-trial. Nor is there anything in the suggestion of the learned counsel of defendants, that the complainants were bound, under the Code, § 3,891 *et seq.*, as a prerequisite to their attacking the judgment on the ground of fraudulent suppression of evidence, to have filed their petition for discovery. As the law stood when these sections were embodied in the Code, the only mode of obtaining a discovery from a party to the suit at law was by a bill in chancery for discovery, or by petition and interrogatories in the suit at law, for a party might then have raised the technical objection to any attempt to examine him as a witness, that he was a party to the record. Now, however, objections on that score are removed, and either party to a suit at law may have the benefit of his adversary's testimony as a witness, without resorting to either a bill or petition for

discovery. Besides, the bill in this case shows on its face, that the Karsh Brothers were actually examined as witnesses, and upon such examination made the false and fraudulent. statements complained of.

There is nothing in any of the defendants' objections which will authorize the court to dismiss the bill for want of equity on its face. On the contrary, admitting the facts which go to vitiate the judgment to be as charged, the complainants' right to a perpetual injunction so far as this part of the case is concerned, would seem to be unquestionable. How the facts may turn out in proof, is another question altogether.

The motion to dismiss for want of equity, must be disallowed.

The result of this ruling is to establish the fact that there is equity on the face of the bill. Consequently, the motion to dissolve the injunction for want of such equity must be overruled.